UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:16-cv-00124-LJM-MJD |
| | ) |
| VIGO COUNTY, INDIANA, and | ) |
| DAVID GRAY in his individual and official | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON SUMMARY JUDGMENT

This matter is before the Court on Defendant Vigo County, Indiana's ("Vigo County's") Motion for Summary Judgment. Dkt. 53. Vigo County moves for summary judgment as to all claims alleged against it by Jane Doe in her Amended Complaint. Dkt. 35. Doe alleges that Vigo County is vicariously liable for the torts of its employee, David Gray, after he assaulted and raped her while she was performing community service under Gray's supervision at a park in Vigo County. Vigo County claims that it cannot be held liable because Gray's tortious behavior falls outside the scope of his employment as a maintenance specialist with Vigo County. For the reasons set forth below, Vigo County's Motion for Summary Judgment is **GRANTED**.

# I. BACKGROUND

## A. VIGO COUNTY PARKS DEPARTMENT

The facts in this matter are not in dispute. Prior to 2009, maintenance specialists with the Vigo County Parks Department ("Parks Department") were supervised by a foreman who directly reported to the Assistant Superintendent. Dkt. 57-1 at 7. Beginning in 2010, the foremen position as a level of management was eliminated due to budgetary concerns. Dkt. 57-1 at 8. Following the cuts, the Parks Department was reorganized to provide a team of two maintenance specialists at each of the primary locations in Vigo County. Dkt. 57-1 at 8.

In 2009, Kara Kish was hired as the Assistant Superintendent of the Parks Department. Dkt. 57-1 at 6. Kish was promoted to Superintendent in 2013. Dkt. 57-2 at 5. The Parks Department hired Adam Grossman as Assistant Superintendent to oversee maintenance specialists and report to Kish. Dkt. 57-3 at 10. Grossman stated that maintenance specialists are "given a lot of autonomy." Dkt. 57-3 at 9.

David Gray began working for the Parks Department on July 1, 2001. Dkt. 57-5 at 12. He was hired as a temporary employee and subsequently received a full-time maintenance specialist position. Dkt. 57-5 at 13; Dkt. 57-1 at 9.

In the fall of 2014, Gray worked with Mark Wiggins at Prairie Creek Park. Dkt. 57-6 at 8, 11. When someone would come in to do community service with the Parks Department, Wiggins was told that Gray would supervise them. Dkt. 57-6 at 13. Wiggins let Gray handle all community service workers. Dkt. 57-6 at 14. Gray and Wiggins worked by themselves at the park a fair amount of time and were provided a lot of autonomy. Dkt. 57-6 at 20; Dkt. 57-3 at 9.

2

## B. INCIDENT

In 2014, Doe was convicted of public intoxication in Vigo County. Dkt. 57-7 at 17. The conviction resulted in probation and the requirement that she perform thirty or forty hours of community service. Dkt. 57-7 at 17. Doe chose to perform her community service at the Parks Department. Dkt. 57-7 at 18-19.

On November 3, 2014, Doe, who brought her daughter with her, went to perform community service for the Parks Department at Prairie Creek Park. Dkt. 57-7 at 25, 29-30. Fearing that she would fail to get her community service hours performed by the date ordered by the court, Doe asked Gray if she could give him fifty dollars to sign off on the rest of her hours. Dkt. 57-7 at 30. Gray told her, "Keep your money. Why don't you go get some tequila and we'll figure something out." Dkt. 57-7 at 31. Gray then gave her money and told her to go to the liquor store. Dkt. 57-7 at 31. Doe purchased the tequila and returned to the park. Dkt. 57-7 at 37. Doe gave the tequila to Gray who procured two glasses with ice and made a drink for himself; Doe also made a drink. Dkt. 57-7 at 39-40.

After making the drinks, Gray told Doe that they were going to clear off some trails. Dkt. 57-7 at 42. Gray, Doe, and Doe's daughter then rode on an ATV vehicle to take Doe's daughter to a playground. Dkt. 57-5 at 42. Doe's daughter was dropped off at a playground and given a walkie-talkie so that she could communicate with Doe if necessary. Dkt. 57-7 at 43-45.

Gray and Doe got back on the ATV and rode to the restrooms, which were approximately four or five minutes away from the playground. Dkt. 57-7 at 45-46. Gray told Doe that they needed to first clean the restrooms before getting to the trails. Dkt. 57-

7 at 46. Bedding and a blanket were on the floor of the bathroom. Dkt. 57-7 at 47. After Doe entered the restrooms, Gray locked the door behind them and began to kiss and place his hands on Doe, who told him that she was not comfortable with the fondling. Dkt. 57-7 at 47-48. Gray then raped Doe in the bathroom. Dkt. 57-7 at 49-51. At one point during the rape, Gray stated, "This is how we get your community service taken care of." Dkt. 57-7 at 50.

Shortly thereafter, Doe's daughter used the walkie-talkie to reach Doe. Dkt. 57-7 at 52. Gray, Doe, and Doe's daughter then cleaned trails for approximately thirty minutes before Gray took Doe and her daughter back to Doe's car. Dkt. 57-7 at 53-54. Doe then took her daughter to her boyfriend's house so that she could go to the hospital. Dkt. 57-7 at 57. Doe spoke with law enforcement officers about the rape at the hospital. Dkt. 57-7 at 57-58.

On November 6, 2014, the State of Indiana charged Gray with: (1) Rape; (2) Criminal Confinement; and (3) Official Misconduct. Dkt. 57-10. Gray pleaded guilty to Criminal Confinement and Official Misconduct. Dkt. 57-11.

### C. OTHER GRAY INCIDENTS

As part of their investigation into the rape, law enforcement spoke with Grossman about Gray's employment. Dkt. 57-3 at 31; Dkt. 57-5, Ex. 6. Grossman informed the officers that Gray had been written up for sexual harassment involving another county employee and was also involved in an undocumented incident approximately 2 years prior that was sexual in nature. Dkt. 57-5, Ex. 6, ¶ 12.

Specifically, in August 2014, Gray told his female co-worker, "you look good" and "you are stacked." Dkt. 57-7 at 23-24. Once the female co-worker told Gray that he

4

crossed the line, she stated that he "immediately corrected" his behavior and nothing more was said at that point. Dkt. 53-5 at 7-8. Gray never touched the female co-worker and she was not aware of him saying or doing anything else that was inappropriate. Dkt. 53-5 at 5-6. Gray received a written reprimand for sexual harassment for his comments. Dkt. 57-7 at 24; 57-3 at 27.

### D. OTHER INCIDENTS WITH VIGO COUNTY EMPLOYEES

In 2007, Ray Watts, the Vigo County Recorder, inappropriately touched another Vigo County employee on multiple occasions. Dkt. 53-14 at 2-3. Watts pleaded guilty to Battery and was required to submit a letter of resignation from his position with Vigo County. Dkt. 53-14 at 3.

In December of 1996, Vigo County Jail Officer Michael Soules touched and had sexual contact with a female inmate at the Vigo County Jail. Dkt. 53-14 at 4. Soules pleaded guilty to Official Misconduct. Dkt. 53-14 at 4.

Larry Wilson was a Parks Department maintenance specialist who worked at Fowler Park, but serviced all three main parks as a mechanic. Dkt. Dkt. 57-12 at 13; 57-2 at 38. In later July or early August of 2011, Wilson sexually assaulted a Parks Department gatekeeper. Dkt. 57-12 at 14-17. The employee who was assaulted claimed that similar incidents had occurred on at least four other occasions. Dkt. 57-12 at 17. The employee informed her Parks Department supervisor about the incident, who in turn notified Kish. Dkt. 57-12 at 24-25.

Wilson was a part of a trio of Parks Department employees that Kish believed to be treating female staff inappropriately. Dkt. 57-1 at 36-38. Kish allowed for these three individuals, which included Wilson, to resign in lieu of termination. Dkt. 57-1 at 37. Kish

5

noted that had Wilson been terminated, she would have documented the sexual harassment. Dkt. 57-1 at 41.

## II. **SUMMARY JUDGMENT STANDARD**

As stated by the Supreme Court, summary judgment is "not []a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part: The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir.1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary

judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir.1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir.1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir.1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir.1996).

### III. **DISCUSSION**

Doe has asserted a total of eleven counts in her Amended Complaint. Dkt. 35. Vigo County has moved for summary judgment as to all counts.

### A. SEXUAL BATTERY

Counts I and II of the Amended Complaint are for sexual battery. Dkt. 35 at 5-6. Count III is for battery. Dkt. 35 at 6. Vigo County claims that Doe's sexual battery claims

should be analyzed with the battery Claim and the remainder of Doe's tort claims. Dkt. 54 at 5. It is true that "[t]here is simply no recognized tort action in Indiana for sexual battery …." *Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1219 (N.D. Ind. 1995). However, at least one Indiana court has recognized that sexual battery may stand alone, but only insofar as it constitutes a battery. *See Pritchett v. Heil*, 756 N.E.2d 561, 566 (Ind. Ct. App. 2001). Therefore, any sexual battery is merely a repackaging of the tort of battery, and a "person commits the civil tort of battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Lessley v. City of Madison*, 654 F. Supp. 2d 877, 914-15 (S.D. Ind. 2009) (quoting *Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008)). Thus, Doe's sexual battery claims will be consolidated with her battery claim.

### B. RESPONDEAT SUPERIOR

Vigo County claims that it cannot be liable for Doe's tort claims of battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under the *respondeat superior* doctrine. Dkt. 54 at 5. Vigo County argues that Gray acted outside of the scope of his employment, which precludes recovery against an employer.

"The general rule is that vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting 'within the scope of employment.'" *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (quoting *Sword v. NKC Hospitals Inc.*, 714 N.E.2d 142, 148 (Ind. 1999)). "And in order for an employee's act to fall 'within the scope of employment,' the injurious act must be

8

incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Id.* (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)). Although an employer is not always immune from vicarious liability for an employee's sexual misconduct, *see Stropes ex rel. Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989), *Southport Little League v. Vaughan*, 734 N.E2d 261, 270-71 (Ind. Ct. App. 2000), "Indiana courts have found whether sexual misconduct is within the scope of one's employment to be a genuine issue of fact only in circumstances where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 612 (7th Cir. 2008) (*comparing Stropes*, 547 N.E.2d at 249-50, and *Vaughan*, 734 N.E.2d at 271, *with Barnett*, 889 N.E.2d at 286, *Konkle v. Henson*, 672 N.E. 2d 450, 457 (Ind. Ct. App. 1996), and *Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691 (Ind. Ct. App. 2006), *abrogated on other grounds by State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778, 782 & n. 2 (Ind. Ct. App. 2006)).

Doe does not even attempt to distinguish the rule in *Hansen*. Rather, Doe maintains that "Gray was in the service of his employer when he criminally confined and raped" her, which is sufficient to establish vicarious liability. Dkt. 56 at 14. Doe further argues that Gray's supervision over community workers within the Parks Department provided Gray the opportunity to rape Doe because she was worried about her community service hours. Dkt. 56 at 16. But the simple fact that Gray was acting as Doe's supervisor at the time of the rape is not sufficient to establish that Gray was acting within the scope of his employment, because the "injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett*,

9

889 N.E.2d at 283.  Doe is unable cite to any evidence to that indicate Gray's job duties towards Doe extended to anything other than supervision and signing off on her hours.

In fact, the two cases cited by Doe, *Stropes* and *Vaughan*, further illustrate why her claim must fail.  The court in *Stropes* reversed summary judgment for a children's center and found that an issue of fact existed as to whether a nurse's aide acted within the scope of his employment when he molested a fourteen-year-old mentally disabled patient.  547 N.E.2d at 250.  The court noted that the aide's job duties included extensive physical contact with the patient including undressing and bathing.  *Id.* at 249.  Thus, the nurse's aide's molestation of the patient could be viewed by a jury as "sufficiently associated" with the acts authorized by his employer.  *Id.* at 250.

In *Vaughan*, the court affirmed a jury verdict that imposed vicarious liability for an equipment manager's sexual molestation of youths participating in a summer baseball program.  734 N.E.2d at 273.  The Indiana Court of Appeals noted that the equipment managers' duties required him to measure and fit the children thereby mandating some form of physical contact.  *Id.* at 266.  The court held that because some of the equipment manager's physical interactions were authorized, it was proper to deny summary judgment and permit a jury to decide whether the employee's injurious actions fell within the scope of the employment.  *Id.* at 269-70.

Doe's case is similar to that of *Konkle*, wherein the Indiana Court of Appeals affirmed summary judgment and refused to impose vicarious liability on a church after its minister molested children under his care.  672 N.E.2d at 457.  Although the minister was granted access to the child because of his position and sexually molested a child on church property on numerous occasions, *id.* at 453, the court found that his unauthorized

acts were "not similar to his duties as a minster," and that he "was not engaging in authorized acts or serving the interests of his employer" when the molestation occurred. *Id.* at 457.

Finally, in *Barnett*, a plaintiff sought public assistance from her local trustee's office and a male employee told her that she would have to assist him with some bookwork prior to receiving assistance. 889 N.E.2d at 283. The plaintiff followed the employee to a backroom to perform the bookwork, at which point the male employee locked the backroom and sexually assaulted her. *Id.* The Indiana Supreme Court affirmed summary judgment for the trustee employer because the employee's sexual misconduct was wholly unrelated to his duties as an employee. *Id.* at 286. "Other than perhaps a greeting handshake, the employee was not explicitly or impliedly authorized to touch or confine applicants for assistance. His alleged acts of confining, sexually touching and raping the plaintiff were not an extension of authorized physical contact." *Id.* The court concluded that "[s]uch acts were not incidental to nor sufficiently associated with the deputy trustee's authorized duties. They did not further his employer's business. And they were not motivated to any extent by his employer's interests." *Id.*

Like the cases in *Vaughan, Konkle,* and *Barnett*, considering all facts in favor of Doe, the Court must conclude that Gray's harmful acts "were not sufficiently associated with his employment duties so as to fall within the scope of [his] employment by the defendant[.]" *Id.* Gray's job duties did not include engaging in any physical contact with community service workers; rather, Gray merely "took care of all the [community service] worker's hours [and] determined what work they would do." Dkt. 56 at 4. Gray's confinement and sexual assault of Doe were not done in furtherance of Vigo County's

interest and were in no way authorized by Vigo County. Because Gray's actions fell outside of the scope of his employment, Vigo County cannot be held vicariously liable under the doctrine of *respondeat superior*. Thus, the claims against Vigo County for sexual battery (Counts I and II), battery (Count III), assault (Count IV), constitutional deprivations under 42 U.S.C. § 1983, (Count V), intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress (Count X), and negligence (count XI), are hereby **DISMISSED**.

### C. CRIMINAL CONFINEMENT

Doe also seeks to recover under Indiana Code Section 34-24-3-1, "which allows monetary recovery for the crime of criminal confinement." *Fioretti v. Aztar Ind. Gaming Co., LLC*, 790 N.E.2d 587, 588 (Ind. Ct. App. 2003). A plaintiff may recover for criminal confinement if she has suffered a pecuniary loss as a result of the violation of that statute. *See* Ind. Code § 34-24-3-1.

Vigo County argues that the Indiana legislature has not explicitly stated that a municipality can be liable for an employee's or agent's criminal confinement and therefore Doe is without a remedy against it as a matter of law. Dkt. 54 at 9-10. Moreover, Vigo County claims that Doe must establish that she suffered a pecuniary loss to recover under under Indiana Code § 34-24-3-1. Dkt. 54 at 9-10.

"[N]either the State nor any other governmental entity is subject to criminal provisions of Indiana statutes without the legislation making that result absolutely clear." *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 341 (Ind. 2005). Doe claims that the Indiana Tort Claims Act ("ITCA") specifically states that a governmental entity or its employee may be liable for false arrest or false imprisonment. Dkt. 56 at 17.

12

Indeed, "ITCA provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss results from the adoption and enforcement of a law, 'unless the act of enforcement constitutes false arrest or false imprisonment.'" *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1103 (S.D. Ind. 2008) (citing Ind. Code § 34-13-3-3(8)). Doe claims that this exception renders her criminal confinement claim viable, because it bears similar elements to a false imprisonment claim. Dkt. 56 at 17-18. But Doe does not allege that Gray's actions were undertaken while enforcing a law. *See* Ind. Code § 34-13-3-3. More importantly, ITCA makes clear that, in order for liability to attach, an employee must be "acting within the scope of the employee's employment." Ind. Code § 34-13-3-3. *See also McConnell*, 573 F. Supp. 2d at 1103-04 ("Indiana Courts have made clear that the ITCA goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business." (citing Indiana cases)). Having already found that Gray was not acting within the scope of his employment, *infra* pt. III, B, the false imprisonment exception found in ITCA is not applicable to his actions and Doe's criminal confinement claim (Count VI) must fail as a matter of law.

## D. *MONELL* CLAIM

Doe has also asserted a *Monell* claim, which subjects a local governing body to monetary damages under 42 U.S.C. § 1983 "if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). A plaintiff must demonstrate that the governmental entity was "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). "The central question is always whether an official policy, however expressed…, caused the constitutional deprivation." *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017).

Doe claims that Vigo County has long maintained a custom of indifference and tolerance of sexual harassment, which resulted in Doe's injury. Dkt. 56 at 20. In support, Gray cites four separate incidents of sexual assault by male Vigo County employees, dating back to December 1996. Dkt. 56 at 20-23. Doe claims that "[o]ver the course of twenty years, Vigo County employees have sexually victimized multiple victims while those men were working as Vigo County employees. Vigo County repeatedly overlooked sexual harassment and/or assault perpetrated by male employees." Dkt. 56 at 24-25.

The evidence, however, suggests otherwise. All of the employees who engaged in these inappropriate actions, which includes Gray, a maintenance specialist, a jail officer, and a county recorder, were terminated, reprimanded, or forced to resign. *See infra*, pt. I, C & D. Doe must set forth "evidence that there is a true municipal policy at

14

issue, not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Citing only four separate incidents in a period of over twenty years is not evidence of a "widespread custom or practice" of overlooking sexual assaults by Vigo County, particularly in light of the fact that each incident was addressed by Vigo County or the criminal justice system. *Thomas*, 604 F.3d at 303. Accordingly, Doe's *Monell* claim (Count VII) fails as a matter of law.

### E. NEGLIGENTION RETENTION

Indiana recognizes a claim against employers for the negligent hiring, supervision, or retention of an employee. *See Hanson*, 551 F.3d at 609 (citing *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994)). "Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee." *Id.* (citing *Konkle*, 672 N.E.2d at 454-55). Moreover, "[t]here are general rules and concepts surrounding the imposition of a duty of care that must also be satisfied." *Clark v. Aris, Inc.*, 890 N.E.2d 760, 763 (Ind. Ct. App. 2008), *trans. denied*. The Court must determine whether to impose a duty of care and consider the following factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 897 N.E.2d 507, 512 (Ind. Ct. App. 2008) (citing *Clark*, 890 N.E.2d at 763). The imposition of this duty is "*limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm*" and whether "the challenged conduct should have been foreseen by the actor who engaged

15

in it." *Clark*, 890 N.E.2d at 764 (emphasis in original) (quoting *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)).

Doe claims that Vigo County knew that Gray "had repeatedly sexually harassed at least one co-worker and was aware of one other undocumented incident of a sexual nature."[1] Dkt. 56 at 26-27. But neither of these incidents would make it "reasonably foreseeable" that Gray would rape Doe. The first incident involved no physical contact and was a verbal assault on a co-worker that was immediately remedied by Gray following a written reprimand. Dkt. 53-5 at 10-11. The other incident cited by Doe was not documented and it is unclear as to what exactly occurred aside from it being "sexual in nature."[2] Dkt. 57-3 at 33-34. Neither of these incidents would make it reasonably foreseeable that Gray would confine and rape Doe. And because it was not reasonably foreseeable that Doe would suffer a foreseeable injury, her claim for negligent retention of Gray (Count VIII) must fail.

---

[1] Doe also claims that the other maintenance specialist's "habit of sexually assaulting and sexually harassing women" should also be considered for Gray's actions, but fails to provide any legal support for this proposition. Dkt. 56 at 26.

[2] Doe's attorney questioned Grossman about the other "incident," dkt. 57-5, Ex. 6, ¶ 12, but did not question him as to the specifics of the incident. *See* dkt. 57-3 at 33-34.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Jane Doe's claims against Defendant Vigo County, Indiana, for the actions of its former employee, Gray, fail as a matter of law. Accordingly, Vigo County's Motion for Summary Judgment is **GRANTED**. Dkt. 53. There is no just reason for delay, therefore, the Court will enter partial judgment as to claims against Defendant Vigo County, Indiana.

SO ORDERED this 18th day of September, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Scott Leroy Barnhart
ATTORNEY AT LAW
barnhart@kbindy.com

Brooke Smith
KEFFER BARNHART LLP
Smith@KBindy.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com